PIONEER BANK AND TRUST COMPANY, Plaintiff and Counterdefendant-Appellee, *v.* REV. HENRY MITCHELL *et al.*, Defendants and Counterplaintiffs-Appellants.

First District (3rd Division) No. 83—551

Opinion filed August 1, 1984.

P. Scott Neville, Jr., of Chicago, for appellants.

Kamm & Shapiro, Ltd., of Chicago (Jeffrey S. Blumenthal, of counsel), for appellee.

JUSTICE WHITE delivered the opinion of the court:

The North Star United Missionary Workers of America, defendant and counterplaintiff-appellant (hereinafter North Star), appeals from an order of the trial court granting summary judgment in favor of Pioneer Bank and Trust Company, plaintiff and counterdefendant-appellee (hereinafter Pioneer Bank) on Pioneer Bank's complaint for a deficiency judgment under section 9—504 of the Uniform Commercial Code (Ill. Rev. Stat. 1981, ch. 26, par. 9—504), and on North Star's counterclaim. On appeal North Star contends that the trial court erred: (1) in granting summary judgment in favor of Pioneer Bank; (2) in granting Pioneer Bank's motion for attorney fees; (3) in denying North Star's motion for summary judgment on its counterclaim; and (4) in denying North Star's motion for summary judgment on Pioneer Bank's complaint.

On July 26, 1977, North Star purchased a 1977 Champion motor home from Open Air USA (Pioneer Bank's assignor). Reverend Henry Mitchell, president of North Star, signed a retail installment contract for the Champion whereby North Star was to pay 84 monthly installments of $244.47 to Open Air USA. North Star defaulted on the contract by failing to pay the July 25, 1980, installment until September 2, 1980, and by failing to make any payment for August and September 1980. On September 26, 1980, North Star entered into an agreement with Pioneer Bank to surrender voluntarily possession of the Champion. According to the Reverend Mitchell, Pioneer Bank agreed to sell the Champion at its appraisal value as determined by Long Chevrolet. The Champion was later appraised at $12,000 to $12,500. On October 6, 1980, Reverend Mitchell surrendered possession of the Champion. Pioneer Bank then hired Statewide Detective Agency (hereinafter Statewide) to conduct the sale of the Champion. Statewide listed the Champion on a list of vehicles it had available for sale and posted the list on its premises. Prospective purchasers tendered bids for the Champion between October 20, 1980, and October 27, 1980. In all, four bids were tendered, and the highest bid was accepted. The Champion was sold to Ross J. Hall for $6,600.

As of October 6, 1980, North Star owed Pioneer Bank $10,135.70. Late charges and resale expenses increased that amount to $10,286.70. Pioneer Bank then brought an action under section 9—

504(2) of the Uniform Commercial Code to recover the difference between the amount owed and the resale price of the Champion. North Star counterclaimed that Pioneer Bank fraudulently misrepresented that the Champion would be sold at its appraisal value, *i.e.*, $12,000 to $12,500; that Pioneer Bank violated the Consumer Fraud and Deceptive Business Practices Act by making a false promise (Ill. Rev. Stat. 1981, ch. 121½, par. 262) and by reselling collateral at a price intended to increase the amount of deficiency recoverable from North Star (Ill. Rev. Stat. 1981, ch. 121½, par. 262G). The parties cross-motioned for summary judgment on both the complaint and the counterclaim.

■ On appeal, North Star contends that the trial court erred in granting summary judgment in favor of Pioneer Bank and awarding the bank a deficiency judgment because Pioneer Bank failed to give notice of the sale to North Star as required by section 9—504 of the Uniform Commercial Code. (Ill. Rev. Stat. 1981, ch. 26, par. 9—504(3).) That section provides in relevant part:

> "Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor, if he has not signed after default a statement renouncing or modifying his right to notification of sale."

Pioneer Bank admits that North Star was not given notice of the sale, but argues that North Star waived its right to notice. On surrender of the Champion motorhome, North Star by its president, Reverend Henry Mitchell, signed the following statement:

> "This voluntary surrender of possession of collateral, which is evidenced by this certificate is made by the undersigned to Pioneer Bank and Trust Co., for the purpose of facilitating the liquidation of the obligation due from the undersigned to Pioneer Bank and Trust Co. and the undersigned hereby waives any right to notice and hearing which it may have by virtue of statute or otherwise ***."

The above statement was signed on October 6, 1980. North Star had previously defaulted on the contract by failing to pay the July 25, 1980, installment until September 2, 1980, and by failing to make any payment for August and September 1980. Section 9—504 requires notice to be given unless the debtor, after default, waives his right to notice. North Star here waived its right to notice. Consequently, we

find meritless North Star's contention that Pioneer Bank failed to meet the notice requirement of Section 9—504.

■ North Star next contends that the trial court erred in granting Pioneer Bank's motion for summary judgment because Pioneer Bank failed to conduct a commercially reasonable sale as required by Section 9—504. An order granting summary judgment is appropriate where the pleadings, depositions and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. (Ill. Rev. Stat. 1981, ch. 110, par. 2—1005(c).) In the instant case, we find that the trial court was presented with a genuine issue of material fact as to the commercial reasonableness of the sale of the Champion motorhome. Accordingly, we hold that the trial court erred in granting summary judgment in favor of Pioneer Bank on its complaint and awarding the bank a deficiency judgment.

Under the Uniform Commercial Code a secured creditor may repossess and resell collateral to satisfy the debtor's obligation upon default. (Ill. Rev. Stat. 1981, ch. 26, par. 9—504.) However, every aspect of the disposition, including the method, manner, time, place and terms, must be commercially reasonable. (Ill. Rev. Stat. 1981, ch. 26, par. 9—504(3).) Section 9—507(2) furnishes criteria of commercial reasonableness:

> "*** If the secured party either sells the collateral in the usual manner in any recognized market therefor or if he sells at the price current in such market at the time of his sale or if he has otherwise sold in conformity with reasonable commercial practices among dealers in the type of property sold he has sold in a commercially reasonable manner."

In the instant case, the pleadings and affidavits submitted by the parties leave several issues of fact unresolved as to the commercial reasonableness of the sale. The affidavits fail to state what the reasonable commercial practices among dealers of motorhomes are. Accordingly, we cannot find that Statewide conformed to those practices in the sale of the Champion motorhome. The affidavits also leave a triable factual issue pertaining to whether the current or market price of the Champion motorhome was obtained. (*California Airmotive Corp. v. Jones* (6th Cir. 1969), 415 F.2d 554.) Lastly, the affidavits leave a triable issue of fact as to whether Statewide was a recognized market for the sale of motorhomes.

The criteria of commercial reasonableness specified in section 9—507(2) are not exclusive. (See Ill. Ann. Stat., ch. 26, par. 9—507, Uniform Commercial Code Comment, at 361-62 (Smith-Hurd 1974).) A

disposition of a repossessed article is commercially reasonable if every aspect of the sale, including the method, manner, time, place and terms, are commercially reasonable. (Ill. Rev. Stat. 1981, ch. 26, par. 9—504(3).) We therefore inquire whether the pleadings and affidavits show that there is no genuine issue as to the commercial reasonableness of the sale. The affidavits submitted by Pioneer Bank show that each week Statewide posted on its premises a list of cars it had available for sale. The Champion motorhome was one of the vehicles on the list. Statewide thereafter received four bids for the Champion motorhome and accepted the highest bid. Statewide did not place advertisements in newspapers, trade magazines or newsletters announcing the sale of the Champion motorhome. Nor did Statewide contact prospective purchasers by letter or telephone to solicit their bids. On the basis of the present evidence we are not prepared to say that Pioneer Bank demonstrated that there was no genuine issue of fact regarding the commercial reasonableness of the sale.

Since we have determined that the pleadings and affidavits leave material issues of fact unresolved, we conclude that summary judgment was improperly entered by the trial court in favor of Pioneer Bank. Accordingly, we reverse the deficiency judgment and attorney fees awarded Pioneer Bank.

■■ North Star next contends that the trial court erred in denying its motion for summary judgment on the counterclaim. North Star contends that there were no disputed issues of fact and it was entitled to judgment as a matter of law. North Star's argument assumes that this court will find the trial court abused its discretion in allowing Pioneer Bank to file an answer to the counterclaim some 350 days after the answer was due. The facts stated in North Star's counterclaim would then be uncontroverted. We need not deal with the question of the trial court's discretion, however, because we find that North Star was not entitled to judgment on the counterclaim as a matter of law.

North Star's counterclaim consists of three counts: count I is based on common law fraud and counts II and III are based on the Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1981, ch. 121½, par. 261 *et seq.*). North Star conceded in its reply brief that it is not entitled to summary judgment on count I of the counterclaim; we therefore deal only with counts II and III.

In count II of the counterclaim North Star alleged that Pioneer Bank made a false promise when it agreed to sell the Champion for the amount of its appraisal by Long Chevrolet and to tender any surplus of resale price over amount owed. North Star further alleged that Pioneer Bank misrepresented the fact that it could sell the

Champion for the amount it was appraised by Long Chevrolet. The Consumer Fraud and Deceptive Business Practices Act provides:

> "Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact \*\*\* in the conduct of any trade or commerce are hereby declared unlawful \*\*\*." (Ill. Rev. Stat. 1981, ch. 121½, par. 262.)

The Act further provides:

> "Any person who suffers damage as a result of a violation of \*\*\* this Act committed by any other person may bring an action against such person \*\*\*." (Ill. Rev. Stat. 1981, ch. 121½, par. 270a.)

Assuming that a false promise was made by Pioneer Bank and that Pioneer Bank misrepresented the fact that it could sell the Champion for its appraisal value, we fail to see how North Star was in any way damaged. At the time the "false promise" and misrepresentation were made, North Star was in default on its payments and Pioneer Bank was entitled to repossess and resell the vehicle. North Star no longer had rights in the Champion, most certainly not the right to retain the vehicle. North Star could not be damaged by the sale of a vehicle in which it no longer had rights.

■ Count III of the counterclaim is based on section 262G of the Consumer Fraud and Deceptive Business Practices Act. (Ill. Rev. Stat. 1981, ch. 121½, par. 262G.) That section provides: "If the seller resells [repossessed] goods at a price intended to increase the amount of the deficiency recoverable from the defaulting buyer, that seller is guilty of an unlawful practice within the meaning of this Act." Count III of the counterclaim does not allege that Pioneer Bank sold the Champion at a price intended to increase the amount of the deficiency recoverable from North Star. Moreover, the affidavit submitted by North Star in support of its counterclaim neither alleges nor proves that Pioneer Bank intended to increase the amount of the deficiency. The burden was on North Star to show a violation of the Consumer Fraud and Deceptive Business Practices Act. (See *M & W Gear Co. v. A. W. Dynamometer, Inc.* (1981), 97 Ill. App. 3d 904, 424 N.E.2d 356; *Duhl v. Nash Realty Inc.* (1982), 102 Ill. App. 3d 483, 429 N.E.2d 1267; *Rice v. Snarlin, Inc.* (1970), 131 Ill. App. 2d 434, 266 N.E.2d 438.) North Star did not meet its burden. Lastly, since we hold that on this record Pioneer Bank was not entitled to a deficiency judg-

ment, North Star has not been damaged by an increase in the amount of the deficiency.

We hold that the trial court was presented with a triable issue of fact as to the commercial reasonableness of the sale, and therefore reverse that portion of the trial court's order granting summary judgment in favor of Pioneer Bank on its complaint and awarding the Bank a deficiency judgment. We also reverse the award of attorney fees to Pioneer Bank. We affirm that portion of the trial court's order denying North Star summary judgment on its counterclaim.

For the aforementioned reasons the judgment of the trial court is affirmed in part and reversed in part.

RIZZI, P.J., and McNAMARA, J., concur.