DONALD FISHER, Plaintiff-Appellant, v. WILLIAM CRIPPEN, Defendant-Appellee.

Fifth District   No. 5—85—0388

Opinion filed June 4, 1986.

240

Thomas F. Crosby, of Winters & Garrison, of Marion, for appellant.

John Jacobsen and Jerome McDonald, both of Campbell, Furnall, Moore & Jacobsen, P.C., of Mt. Vernon, for appellee.

JUSTICE WELCH delivered the opinion of the court:

Plaintiff, Donald Fisher, sued defendant, William Crippen, alleging a violation of the Structural Work Act in one count and negligence in a second count. The court granted defendant's motion for summary judgment on both counts. Plaintiff has appealed claiming genuine issues of material fact remained on both counts and that defendant was not entitled to judgment as a matter of law.

The following facts were found in the depositions and affidavits filed in the trial court. Defendant was building his own home, one which he had designed. A power company pole stood at each front corner of the lot, and electrical cables ran along the entire front of the property. On February 20, 1981, defendant phoned the Carbondale Concrete Company to order concrete blocks. Later that day, plaintiff, an employee of Carbondale Concrete, delivered the blocks to the construction site using a truck with a hoist boom used for unloading materials. When plaintiff arrived in the truck, defendant was finishing fresh concrete. Defendant saw plaintiff drive up, said, "Hello," but

gave him no instructions.

Plaintiff backed the truck into the gravel driveway of the site, the only vehicle access point. Plaintiff, while standing on the ground next to the truck, began to operate the boom using a hand-held remote control device. The boom was approximately 20 to 30 feet long. As plaintiff maneuvered the boom, it came in contact with overhead power lines. Plaintiff was severely injured by an electrical shock. Defendant ran to where plaintiff was lying, knocked the energized control box from plaintiff's chest, and dragged plaintiff away from the truck, the tires of which were burning.

In his deposition, plaintiff admitted that he was aware that if he came in contact with high voltage electricity, he would be shocked, and also admitted that he knew he should not let the boom come in contact with overhead wires. He said he had seen the overhead wires prior to the accident. He also stated that there was a warning sign on the back part of the boom concerning the danger of operating the boom near overhead electrical wires, and that he had seen the sign prior to the incident. Plaintiff stated he had used this truck with the boom since 1977, and that the truck and boom had been purchased for his use. In an affidavit, plaintiff stated that he had intended to "move the materials to positions within the foundation of the construction where said materials could be made immediately accessible for workers to incorporate into the structure that was being erected."

Also in the record is the affidavit of Jim Greer, a partner in Carbondale Concrete. He stated that defendant was a journeyman carpenter and was familiar with the custom and practice for delivering blocks to residential construction sites. Mr. Greer stated that the custom is for the person in charge of the construction site to direct the driver to place blocks within the foundation so they would be immediately accessible for the erection of the structure.

Defendant, in a deposition, stated he was not a general contractor for purposes of building this house. He also stated he did not have the right to stop the work plaintiff was doing, and instead felt he should yield to plaintiff's experience. However, defendant stated he felt he did have the right to stop the work of certain other persons at the site. While defendant was busy with concrete and did not see the accident happen, he did see where plaintiff parked the truck prior to beginning the unloading operation. According to defendant, plaintiff could have backed up another "four to five feet."

Defendant's motion for summary judgment alleged that plaintiff was not entitled to recover under the Structural Work Act (Ill. Rev. Stat. 1985, ch. 48, pars. 60-69) (hereinafter referred to as the Act) be-

cause, for various reasons, plaintiff was not a person covered by the Act, and also because defendant was not in charge of the work at the construction site. Defendant also alleged plaintiff could not recover under a negligence theory because defendant had no duty to protect plaintiff against the obvious danger presented by overhead electrical wires. The court granted summary judgment in favor of defendant on both the Structural Work Act count and the negligence count on May 21, 1985.

■■ ■ Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. (*Pioneer Bank & Trust Co. v. Mitchell* (1984), 126 Ill. App. 3d 870, 873, 467 N.E.2d 1011, 1014.) Summary judgment is proper only where the evidence, when construed most strongly against the moving party, establishes clearly and without doubt his right thereto. *Motz v. Central National Bank* (1983), 119 Ill. App. 3d 601, 605, 456 N.E.2d 958, 961.

■■ The following elements must be proved in an action brought under the Structural Work Act: (1) the plaintiff was engaged in or was passing under or by a structural activity; (2) the activity was being performed with reference to a structure; (3) a scaffold or other mechanical device was being used; (4) a defect existed in the construction or use of the device; (5) the defect proximately caused the plaintiff's injuries; (6) the defendant had charge of the work being performed; and (7) the defendant wilfully violated the Act's safety standard. *Gill v. ParCable, Inc.* (1985), 138 Ill. App. 3d 409, 411, 485 N.E.2d 1215, 1216.

■■ ■ Defendant argues that he was not "in charge of" the work done by plaintiff. The issue of who has charge of the work is usually for the jury to decide, but the issue is one of law if the undisputed facts permit only one conclusion. (See *Winter v. Davis* (1980), 85 Ill. App. 3d 912, 915, 407 N.E.2d 696, 699.) Mere ownership of the premises is not sufficient to place the owner "in charge of" the work. (*Winter v. Davis* (1980), 85 Ill. App. 3d 912, 407 N.E.2d 696.) Plaintiff relies on defendant's actual presence at the site, that defendant was a carpenter and that he was doing some work himself. However, when viewed in light of all the circumstances, these facts show defendant was not in charge of the work. If defendant was present, and "in charge of" the unloading, why did he not take charge? If he had taken charge of the unloading, we would have to conclude that he was "in charge." If defendant had been absent when plaintiff delivered the blocks, defendant might still be deemed "in charge," though by virtue of his absence he could not have taken charge of that opera-

tion. Here, however, defendant was in ideal position to "take charge," yet did not do so.

Additional undisputed facts also indicate defendant was not "in charge of" the unloading. Plaintiff provided his own equipment for the unloading. (*Winter v. Davis* (1980), 85 Ill. App. 3d 912, 916, 407 N.E.2d 696, 700.) Defendant had never operated a truck crane and thus was unfamiliar with plaintiff's equipment. We conclude defendant was not in a position to assure plaintiff's safety or alleviate improper work habits or deficiencies in plaintiff's equipment. (*Winter v. Davis* (1980), 85 Ill. App. 3d 912, 407 N.E.2d 696.) There was no reason for defendant to expect to tell plaintiff how to operate his own truck safely.

■■ Because we find that the issue of whether defendant was in charge of the work is beyond question of fact, the summary judgment of the trial court as to count I was proper. However, we believe the judgment was proper for a second reason. To establish a cause of action under the Act, the plaintiff must prove that defendant's violation of the Act was a proximate cause of the plaintiff's injury. (*Ashley v. Osman & Associates, Inc.* (1983), 114 Ill. App. 3d 293, 296, 448 N.E.2d 1011, 1013; *Gill v. ParCable, Inc.* (1985), 138 Ill. App. 3d 409, 485 N.E.2d 1215.) In the Structural Work Act count of his ultimate complaint, plaintiff alleged that defendant violated the Act by failing to provide a safe, suitable and proper method of placement of the "mechanical contrivance." Yet plaintiff admitted his awareness of the danger of overhead wires, and that he saw these wires as would anyone who looked. There is no allegation that the wires were hidden or that the unloading could only be accomplished under the wires. In light of these admissions, is there any issue of fact that defendant's alleged omissions were a proximate cause of plaintiff's injury? No, the cause which far exceeds defendant's conduct in significance is plaintiff's failure to look at the obvious danger overhead while operating the boom; compared to that, defendant's conduct was not a lesser cause, but rather no cause at all.

■■ We turn to count II, the negligence count. Again, considerations of proximate cause require judgment for defendant. Proximate cause is also indispensable to a negligence cause of action. (See *Rios v. Sifuentes* (1976), 38 Ill. App. 3d 128, 130, 347 N.E.2d 337, 339.) As we explained in *Kerns v. Engelke* (1977), 54 Ill. App. 3d 323, 333, 369 N.E.2d 1284, 1292, *aff'd in part, rev'd in part* (1978), 76 Ill. 2d 154, 390 N.E.2d 859:

  " 'Proximate cause' is a term of art which encompasses the distinct concepts of cause in fact and legal cause. Determining

whether the defendant's conduct was a cause of plaintiff's injury involves nothing more than an analysis of the facts. Once it is established that the defendant's conduct has in fact been a cause of the injury, however, there remains the question whether the defendant should be legally responsible for what he has caused. As otherwise stated, the question is whether the policy of the law will extend defendant's responsibility to the consequences which have in fact occurred.

Two tests are generally applied in determining the issue of causation in fact. Under the 'substantial factor' test, the defendant's conduct is a cause of an event if it was a material element and a substantial factor in bringing it about. Under the second test, commonly called the 'but for' rule, the defendant's conduct is not a cause of an event if the event would have occurred without it. [Citations.]"

A business invitee is responsible for his own safety and must be held equally aware of all obvious and normal hazards incident to the premises as the possessor of the land. The liability of the possessor of the land is predicated on his failure to expect that his invitee will not discover or realize the danger. (*Genaust v. Illinois Power Co.* (1976), 62 Ill. 2d 456, 468-69, 343 N.E.2d 465, 472.) It is common knowledge that any electrical line or wire is dangerous. (*Genaust v. Illinois Power Co.* (1976), 62 Ill. 2d 456, 343 N.E.2d 465.) Again, plaintiff does not allege that the wires were hidden or that there was only one place from which he could unload his truck.

In keeping with our depiction in *Kerns* of the term "proximate cause" as embracing both "cause in fact," a factual question for the trier of fact, and "legal cause," a question of law for the court, we wish to be specific in stating that in this case we are concerned with "cause in fact," the factual aspect of the term "proximate cause." Although cause in fact is ordinarily for the jury to determine, where it is apparent from the undisputed facts that only one conclusion can be drawn, the question then becomes one for the court to resolve as a matter of law. (*Nolan v. Johns-Manville Asbestos* (1981), 85 Ill. 2d 161, 421 N.E.2d 864; *Witherell v. Weimer* (1981), 85 Ill. 2d 146, 396 N.E.2d 268; *Sharpe v. Jackson Park Hospital* (1981), 99 Ill. App. 3d 874, 425 N.E.2d 1244.) And so it is in this case where the plaintiff brought his own truck onto the premises, was unloading it by himself with equipment he was familiar with, selected the unloading location, saw the power lines overhead and was aware of their danger. Under such circumstances, there can be but one conclusion and that is that the plaintiff was 100% responsible for his own injury. Ac-

cordingly, summary judgment for the defendant on count II of plaintiff's complaint charging negligence was proper. *Connelly v. Uniroyal, Inc.* (1979), 75 Ill. 2d 393, 389 N.E.2d 155; *Econo Lease, Inc. v. Noffsinger* (1976), 63 Ill. 2d 390, 332 N.E.2d 470.

Affirmed.

JONES, J., concurs.

JUSTICE HARRISON, dissenting:
I respectfully dissent.

In reviewing summary judgment on the Structural Work Act count, the majority finds defendant was not in charge of the work. The majority asks, "If defendant was present, and 'in charge of' the unloading, why did he not take charge?" While taking charge would have been evidence defendant was "in charge," he did not have to "take charge" of the unloading, or even be in direct charge of that particular work to be liable. In *Johnson v. Commonwealth Edison Co.* (1985), 133 Ill. App. 3d 472, 478, 478 N.E.2d 1057, 1061, the court stated: "[I]t is not necessary that a party be in direct charge of the particular operation from which the injury arose if it is in charge of the overall work for the project under construction. [Citation.] One or more parties can have charge of the overall work, and other parties can have charge of the phase of the work in connection with which an injury occurs. In that event, all of them would have charge of the work within the meaning of the Act." Our supreme court, in the often cited case of *Larson v. Commonwealth Edison Co.* (1965), 33 Ill. 2d 316, 322, 211 N.E.2d 247, 251, stated: "[W]hile the actual exercise of supervision and control over the work and the persons doing it, or the retention of the right to so supervise and control, may be factors bearing on the ultimate question of whether an owner is 'in charge,' they are not necessary or conclusive factors, nor is either made a *sine qua non* for liability under the statute." We recently restated these principles in *Simmons v. Union Electric Co.* (1984), 121 Ill. App. 3d 743, 752, 460 N.E.2d 28, 34, *aff'd* (1984), 104 Ill. 2d 444, 473 N.E.2d 946. These cases indicate that Illinois courts have broadly construed the phrase "having charge of." One result of this expansive construction is that persons who have no direct contact with the injury may be held liable for damages because of supervisory power in the general work area. *Przybylski v. Perkins & Will Architects, Inc.* (1981), 95 Ill. App. 3d 620, 622-23, 420 N.E.2d 524, 527.

In determining whether a defendant has charge of the work, a

court must consider the totality of the circumstances, with attention to numerous factors which are listed in *Chance v. City of Collinsville* (1983), 112 Ill. App. 3d 6, 11, 445 N.E.2d 39, 42. These factors are: (1) supervision and control of the work; (2) retention of the right to supervise and control the work; (3) constant participation in ongoing activities at the construction site; (4) supervision and coordination of subcontractors; (5) responsibility for taking safety precautions at the job site; (6) authority to issue change orders; (7) the right to stop the work; (8) ownership of the equipment used on the job site; (9) defendant's familiarity with construction customs and practices; and (10) whether defendant was in a position to insure worker safety or alleviate equipment deficiencies or improper work habits. Here there was evidence defendant was involved in doing some of the labor himself. He was the one who called the plaintiff's company to order the concrete blocks. He was apparently constantly participating in ongoing activities at the site. There was evidence defendant had experience as a journeyman carpenter. While defendant stated he did not have the right to stop the work plaintiff was doing, he did state that he felt he had the right to stop the work of certain other persons at the construction site. It could be inferred he at least retained the right to supervise and control the work. In *Bishop v. Crowther* (1980), 92 Ill. App. 3d 1, 11, 415 N.E.2d 599, 607, the court found that a homeowner was in charge of work done on his house. The court stated: "Although, in most instances, a homeowner will do nothing more than hire an independent contractor to do the work, the typical homeowner would not normally possess the high degree of knowledge of the construction industry demonstrated by [defendant]." The court refused to disturb the jury's finding on this issue because defendant "was not liable because of mere ownership, but because of his supervision and control of the work." (92 Ill. App. 3d 1, 11, 415 N.E.2d 599, 607.) While admittedly some of the factors to be considered under *Chance* support an argument that defendant here was not in charge of the work, there is sufficient evidence in plaintiff's favor to conclude that a genuine issue of material fact remains.

The majority also finds defendant is entitled to summary judgment because plaintiff failed to show defendant's violation of the Act caused the injury. The majority states: "There is no allegation *** that the unloading could only be accomplished under the wires." However, the record shows the driveway plaintiff used was the only vehicle access point on defendant's property, and that the wires hung over this driveway. I acknowledge plaintiff was the person who raised the hoist boom into the wires, but the sole inquiry under the Act is the

defendant's culpability and not the plaintiff's conduct, and comparative negligence is not applied to limit a plaintiff's recovery. *Simmons v. Union Electric Co.* (1984), 104 Ill. 2d 444, 459, 473 N.E.2d 946, 953.

Nor can summary judgment for defendant be based upon any other element of a Structural Work Act claim. To recover under the Act, plaintiff must establish he was engaged in a structural activity covered under the Act. If his activities were connected with, and significantly furthered one of the activities enumerated in the Act, then plaintiff can recover. Plaintiff's actions must be an integral part of the erection, alteration, removal, painting or cleaning of a structure. (*Simmons v. Union Electric Co.* (1984), 121 Ill. App. 3d 743, 751, 460 N.E.2d 28, 33, *aff'd* (1984), 104 Ill. 2d 444, 473 N.E.2d 946.) There is no dispute here that the house being built was a structure. The defendant argues that the act of delivering materials to a construction site is not an activity covered by the Act. Unloading building materials has been held to be a function covered by the Act when it is an integral part of an erection operation. (*McNellis v. Combustion Engineering, Inc.* (1974), 58 Ill. 2d 146, 151, 317 N.E.2d 573, 576.) There was evidence here that plaintiff would be placing the materials within the foundation so they would be close to the point where they would be used. Under these circumstances, plaintiff was engaged in an integral part of the erection of the house.

Next, plaintiff argues that he was using a scaffold or mechanical device as required under the Act. The record shows plaintiff was operating a hoist boom to unload blocks from a truck. It has been held that the Act "is intended to cover support devices used on a construction site, whether their purpose is to support workmen ·or materials." (*Prange v. Kamar Construction Corp.* (1982), 109 Ill. App. 3d 1125, 1130, 441 N.E.2d 889, 893.) The device here supported materials. Thus, summary judgment for defendant could not be based on this element.

Nor could summary judgment for defendant be based upon the element requiring a defect in the construction or operation of the device. The defect here was in the use of the device as it lifted materials from the truck. See *Burke v. Illinois Power Co.* (1978), 57 Ill. App. 3d 498, 373 N.E.2d 1354 (where the court did not discuss but assumed liability under the Act where a crane came in contact with overhead electrical wires).

The final element which must be proved under the Structural Work Act is that the violation was wilful. A wilful violation occurs when one having charge of the work knows that a dangerous condi-

tion exists or by the exercise of reasonable care could have discovered the existence of the dangerous condition. (*Simmons v. Union Electric Co.* (1984), 121 Ill. App. 3d 743, 754, 460 N.E.2d 28, 36, *aff'd* (1984), 104 Ill. 2d 444, 473 N.E.2d 946.) Defendant was the owner of the property and had allowed a driveway to be constructed under the wires. Whether defendant knew or should have known that the hoist boom might come in contact with the wires should be left to a finder of fact.

In summary, defendant has failed to establish clearly and without doubt his right to summary judgment on the Structural Work Act count (see *Motz v. Central National Bank* (1983), 119 Ill. App. 3d 601, 605, 456 N.E.2d 958, 961), and thus I would reverse summary judgment on this count and remand for further proceedings.

Turning then to the negligence count, I find I again cannot agree with the majority, but would reverse summary judgment on this count and remand. The majority finds defendant failed to establish the proximate cause element, repeating the misconception that plaintiff does not allege there was only one place from which he could unload. As I have noted, the record does show the wires ran above the only vehicle access point.

The majority relies on the finding that the danger from the wires was obvious. Section 343 of the Restatement (Second) of Torts (1965) outlines the liability of a defendant in a case such as the one before us. This section states:

"A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger." (Restatement (Second) of Torts, sec. 343, at 215 (1965).)

Section 343 should be read in conjunction with section 343A(1):

"(1) A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness." Restatement (Second) of Torts, sec. 343A(1), at 218 (1965).

It is clear from reading sections 343 and 343A that a possessor of land will not automatically be free from liability whenever the danger is obvious. The defendant can be liable for an obvious danger if he should expect plaintiffs would not discover the condition or fail to protect themselves against it. Comment f to section 343A states:

> "Such reason to expect harm to the visitor from known or obvious dangers may arise, for example, where the possessor has reason to expect that the invitee's attention may be distracted, so that he will not discover what is obvious, or will forget what he has discovered, or fail to protect himself against it. Such reason may also arise where the possessor has a reason to expect that the invitee will proceed to encounter the known or obvious danger because to a reasonable man in his position the advantages of doing so would outweigh the apparent risk. In such cases the fact that the danger is known, or is obvious, is important in determining whether the invitee is to be charged with contributory negligence, or assumption of risk. \*\*\* It is not, however, conclusive in determining the duty of the possessor, or whether he has acted reasonably under the circumstances." (Restatement (Second) of Torts, comment f, sec. 343A, at 220 (1965).)

In the present case, plaintiff admitted seeing the power lines and knowing the danger they posed. But a duty to protect remained regarding danger against which plaintiff reasonably would fail to protect himself, or forget about in the course of his work. The nature of plaintiff's activity here would direct his attention to where the load was being lifted from the truck and to the location on the ground where the load was to be placed rather than toward the overhead lines. I cannot say conclusively defendant did not breach this duty or that the breach was not a proximate cause of the injury. The fact the danger may have been obvious here would be important under the comparative negligence doctrine. However, I cannot agree with the majority's conclusion that plaintiff was 100% responsible for his injury.

Defendant has failed to show clearly and without doubt his right to summary judgment on the negligence count, and I would reverse the summary judgment entered on this count and remand for further proceedings, as I would on the Structural Work Act count.