**J.S. ALBERICI CONSTRUCTION COMPANY, INC., Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 94–3924.**

United States Court of Appeals, Eighth Circuit.

Submitted June 14, 1995.

Decided Aug. 30, 1995.

431

Donald L. O'Keefe, St. Louis, MO, argued
(Richard J. Zalasky, on the brief), for appel-
lant.

Henry J. Fredericks, Asst. U.S. Atty., St. Louis, MO, argued, for appellee.

Before BOWMAN, Circuit Judge; HEANEY, Senior Circuit Judge; and MORRIS SHEPPARD ARNOLD, Circuit Judge.

HEANEY, Senior Circuit Judge.

J.S. Alberici Construction Company, Inc., (Alberici) commenced an action against the United States seeking contribution for settlement payments it made to two injured employees of one of its subcontractors. The district court granted summary judgment in favor of the United States. The court found that the United States did not act tortiously and that, even if it had, Alberici's claim was barred by the discretionary function exception to the Federal Tort Claims Act. We affirm, but on different grounds than the district court.

The United States Army Corps of Engineers contracted with Alberici to rehabilitate Lock and Dam 22 on the Mississippi River at Quincy, Illinois. Alberici employed Shield Painting Company, which hired Carl Herington and Robert Cowder. In November 1989 Herington and Cowder were injured when they were hoisting a 170–pound washer from a pier to the top of the dam. The handrail the employees were using to help hoist the washer broke, and they fell off the dam.

Herington and Cowder brought suit against Alberici in Illinois state court and against the United States in federal district court in Missouri. Alberici settled its case by paying $800,000 to Herington and $125,000 to Cowder. A few months later the employees dismissed with prejudice their federal court action against the United States. Thereafter Alberici commenced this action against the United States for contribution arising out of its settlements with Herington and Cowder. The district court granted summary judgment in favor of the United States, and Alberici appeals.

■ We review de novo the district court's grant of summary judgment. *LeBus v. Northwestern Mutual Life Ins. Co.*, 55 F.3d 1374, 1376 (8th Cir.1995). We must decide whether Alberici, the nonmoving party, has presented sufficient evidence from which a reasonable jury could return a verdict in its favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). The nonmovant must present more than a scintilla of evidence and must set forth specific facts showing that there is a genuine issue for trial. *Id.* at 249, 252, 106 S.Ct. at 2510–11, 2512. In reviewing the appropriateness of summary judgment, we accept as true the evidence presented by Alberici and draw all inferences in its favor. *Id.* at 255, 106 S.Ct. at 2513–14.

■ To receive contribution from the United States, Alberici must prove that the United States is liable in tort for the injuries to Cowder and Herington. *See* Joint Tortfeasor Contribution Act, Ill.Stat. ch. 740 § 100/2. Mere ownership of a property does not impose liability under the Structural Work Act. *Gentile v. Kehe*, 165 Ill.App.3d 802, 117 Ill.Dec. 476, 478, 520 N.E.2d 827, 829 (1987), *app. denied*, 121 Ill.2d 569, 122 Ill.Dec. 437, 526 N.E.2d 830 (1988). A required element[1] of liability under the Act is that the United States be in "charge of"[2] the lock and dam rehabilitation project. *See* Ill.

---

1. Several elements must be satisfied to prevail in an action under the Structural Work Act. A plaintiff must prove that (1) he or she was engaged in or was passing under or by a structural activity, (2) the activity was being performed with reference to a structure, (3) a scaffold or other mechanical device was being used, (4) a defect existed in the construction or use of the device, (5) the defect proximately caused his injuries, (6) the defendant had charge of the work, and (7) the defendant willfully violated the Act's safety standard. *Shaheed v. Chicago Transit Auth.*, 137 Ill.App.3d 352, 92 Ill.Dec. 27, 31, 484 N.E.2d 542, 546 (1985). We focus here on the sixth element.

2. This section provides, in part:

Any owner, contractor, sub-contractor, foreman or other person *having charge of* the erection, construction, repairing, alteration, removal or painting of any building, bridge, viaduct or other structure within the provisions of this Act, shall comply with all the terms thereof, and any such owner, contractor, sub-contractor, foreman or other person violating any of the provisions of this Act shall be guilty of a Class A misdemeanor.

(Emphasis added.)

Stat. ch. 740 § 150/9. Whether an entity is in charge of the work being done is determined by examining the totality of the circumstances. *Norton v. Wilbur Waggoner Equip. Rental & Excavating Co.*, 76 Ill.2d 481, 31 Ill.Dec. 201, 206, 394 N.E.2d 403, 408 (1979). More than one party may have charge of a work site under the Structural Work Act. *Ewert v. Wieboldt Stores, Inc.*, 84 Ill.App.3d 1008, 40 Ill.Dec. 191, 196, 405 N.E.2d 1283, 1288 (1980).

■ A number of factors must be considered when determining whether a defendant has "charge of" a work project under the Act:

> (1) supervision and control of the work; (2) retention of the right to supervise and control the work; (3) constant participation in ongoing activities at the construction site; (4) supervision and coordination of subcontractors; (5) responsibility for taking safety precautions at the job site; (6) authority to issue change orders; (7) the right to stop the work; (8) ownership of the equipment used on the job site; (9) defendant's familiarity with construction customs and practices; and (10) whether defendant was in a position to assure worker safety or alleviate equipment deficiencies or improper work habits.

*Chance v. City of Collinsville*, 112 Ill.App.3d 6, 67 Ill.Dec. 747, 750, 445 N.E.2d 39, 42 (1983) (citations omitted).

It is undisputed that the Army Corps of Engineers satisfies factors six, seven, and nine. The Corps had the right to issue change orders and to stop the work for non-compliance with contract specifications, and it was familiar with construction customs and practices. There is also no dispute over the eighth factor, which concerns ownership of the equipment on the job site. The United States did not own the equipment Alberici used to carry out the lock and dam rehabilitation project. The United States owned a crane, which its operators occasionally used to move heavy equipment for subcontractors if it was not otherwise needed by the Corps. This crane was not involved in the accident that injured Cowder and Herington. The United States also owned the pedestrian handrail, of course, but this permanent structure was part of the lock and dam property itself and cannot be considered "equipment" for purposes of this analysis.

The first two *Chance* factors—actual supervision and control of the work, or retention of the right to supervise and control—entail an examination of which tasks were contractually entrusted to each party as well as what role each party actually played at the job site. The remaining *Chance* factors also come into play. Clause 49 of the contract states that "[a]t all times during performance of this contract and until the work is completed and accepted, the Contractor shall directly superintend the work...." Alberici was also responsible for supervising and coordinating subcontractors (the fourth factor). Clause 50 expands on Alberici's responsibilities and specifically includes its obligation to take proper health and safety precautions (the fifth factor):

> The Contractor shall ... be responsible for obtaining any necessary licenses and permits, and for complying with any Federal, State, and municipal laws, codes and regulations.... The Contractor shall also ... take proper safety and health precautions to protect the work, the workers, the public, and the property of others. The Contractor shall also be responsible for all materials delivered and work performed until completion and acceptance of the entire work....

Clause 56, entitled "Accident Prevention," further defines Alberici's responsibility for health and safety. That provision specifies that "[i]n performing this contract, the Contractor shall provide for protecting the lives and health of employees and other persons." To that end, "the Contractor shall—(1) Provide appropriate safety barricades, signs, and signal lights; (2) Comply with the standards issued by the Secretary of Labor ...; and (3) Ensure that any additional measures the Contracting Officer determines to be reasonably necessary for this purpose are taken." Contractual responsibility for health and safety thus falls squarely on Alberici.

■ Alberici argues that the Corps exercised supervision and control of the site because the Corps constantly participated in

the ongoing activities at the site and was in a position to guarantee safety and alleviate problems with equipment or work practices (factors three and ten). As support, Alberici points out that Edmund Karwatka, the Corps' construction representative, was at the job site "full time." Karwatka testified, however, that the extent of his day-to-day responsibility was to "oversee[ ] the contractor's quality control man to see that he was doing his job." App. 113. In general, the only time Karwatka would make a direct suggestion to an employee was when the employee was exposed to immediate danger of injury. Otherwise, Karwatka would direct his comments about safety problems to Alberici's person in charge of safety. App. 115–16. Karwatka would also point out work methods that did not comply with contract specifications, and possessed the authority to stop work if necessary to ensure such compliance. App. 120. Approximately once a quarter the Corps would send a safety inspector to review the work at the job site. App. 118.

 The inspection and monitoring of a contractor's compliance with contract terms, standing alone, do not support a finding that a party is in "charge of" a work project for purposes of liability under the Structural Work Act. *See Chance*, 67 Ill. Dec. at 752, 445 N.E.2d at 44. Rather, we must evaluate the totality of the circumstances surrounding the work project as "evidenced by [the parties'] contractual obligations and job site conduct and contacts." *Fruzyna v. Walter C. Carlson Assoc., Inc.*, 78 Ill.App.3d 1050, 78 Ill.Dec. 385, 391, 398 N.E.2d 60, 66 (1979).

 The issue of who has "charge of" a project for purposes of liability under the Structural Work Act is usually for the jury to decide, but the issue is one of law if the facts permit only one conclusion. *Fisher v. Crippen*, 144 Ill.App.3d 239, 98 Ill.Dec. 183, 185, 493 N.E.2d 1204, 1206 (1986). Here there is no question that the contract gave Alberici the responsibility to "directly superintend the work," *see* Clause 49, and to take safety precautions in carrying out the lock and dam rehabilitation project, *see* Clauses 50 and 56. The Corps did not give day-to-day direction

to the workers, nor did the United States furnish the tools, equipment, or materials used. The Corps' presence and participation at the job site was devoted to ensuring that Alberici upheld its contractual obligations. Thus, although Corps personnel monitored activities at the job site, it was not strictly speaking "in a position to assure worker safety or alleviate equipment deficiencies or improper work habits," the tenth *Chance* factor, because that responsibility had been contractually assigned to Alberici. We decline to equate the Corps' monitoring functions with contractor Alberici's direct responsibility for safety, equipment, and proper work methods under the contract. Having examined the totality of the circumstances, we conclude that the evidence is insufficient to create a factual dispute and that the United States was not in "charge of" the lock and dam rehabilitation project as a matter of law. We therefore hold that summary judgment in favor of the United States was proper on Alberici's claim under the Structural Work Act.

 We also find summary judgment an appropriate method to dispose of Alberici's claim under the Illinois Premises Liability Act. Liability under this Act requires a finding that the United States breached its duty of "reasonable care under the circumstances regarding the state of the premises or acts done or omitted on them." Ill.Stat. ch. 740 § 130/2; *Skoczylas v. Ballis*, 191 Ill.App.3d 1, 138 Ill.Dec. 398, 400, 547 N.E.2d 565, 567 (1989). Alberici contends that liability attaches under the Act because the United States was negligent in failing to maintain the pedestrian handrail. It is undisputed, however, that the handrail gave way as a result of being improperly used to hoist a 170–pound washer. Two employees of the subcontractor placed ropes around the washer, wound the ropes around the rail, and leaned against the rail in an effort to lift the washer to the top of the dam. The rail gave way, and the employees fell off the dam. The handrail was built to protect pedestrians, not to hoist heavy equipment. Here the rail was being used for an unintended and improper purpose, and on the facts before us Alberici cannot satisfy the causation element

of a negligence claim. The United States is entitled to summary judgment on this claim.

The district court held in the alternative that, even if the United States had acted tortiously, it is immune from liability under the discretionary function exception of the Federal Tort Claims Act, 28 U.S.C. § 2680(a). In light of our holding today, we need not address this issue.

Accordingly, we affirm the summary judgment in favor of the United States.