EDWARD S. ALFANO, Plaintiff-Appellant, *v.* THE BOARD OF TRADE OF THE CITY OF CHICAGO *et al.*, Defendants.—(FULLERTON CONSTRUCTION CO., Defendant-Appellee.)

First District (4th Division)    No. 78-899

Opinion filed August 30, 1979.—Rehearing denied October 11, 1979.

Sloan and Connelly, P. C., of Chicago (Michael P. Connelly, of counsel), for appellant.

Garretson & Santora and Jerome H. Torshen, Ltd., both of Chicago (Jerome H. Torshen and Abigail K. Spreyer, of counsel), for appellee.

Mr. PRESIDING JUSTICE JIGANTI delivered the opinion of the court:

The plaintiff, Edward S. Alfano, an employee of the M. W. Ryan Company (Ryan), was injured in a fall from a scaffold while installing ceiling tile during an alteration project in the Board of Trade Building. He filed a complaint in the circuit court of Cook County alleging that several defendants, including the Fullerton Construction Company, Inc. (Fullerton), a subcontractor on the project, caused his injuries through negligence and violation of the Structural Work Act (the Act). (Ill. Rev. Stat. 1975, ch. 48, par. 60 *et seq.*) Fullerton filed a motion for summary judgment, asserting that it could not be liable under the Act because it did not violate the Act while having charge of the work; it also denied that any of its actions were negligent. The trial court entered judgment in favor of Fullerton, and Alfano appeals, contending that genuine issues of

material fact exist as to Fullerton's liability both under the Act and the negligence counts of his complaint.

Much of the work at the project was done concurrently. While Fullerton's crew put up drywall partitions at the jobsite, Ryan, another subcontractor, had its employees install the ceiling tiles. Across the floor of the work area there were trenches, measuring 8″ x 15″, cut for electrical wiring. Fullerton's foreman stated that the general contractor for the project instructed Fullerton to store its drywall near the trenches to avoid disturbing other tradesmen.

Alfano said that the trenches and the placement of the drywall next to them caused him to use a rolling "Baker" scaffold to install the tiles although a sturdier "pipe'" scaffold would have been more appropriate for the job. He stated that to insure safety two Baker scaffolds should have been used, in tandem, but that the drywall next to the trenches created an obstruction which prevented this precaution. He warned Fullerton and the general contractor that the single Baker scaffold might be dangerous, but the general contractor told him "just get [the job] done." Since Fullerton had charge of the drywall and since its placement made the scaffold unsafe, Alfano asserts that Fullerton is liable under the Act as a subcontractor who committed a violation of the Act while having charge of the work which gave rise to his injuries. In addition, Alfano argues that Fullerton's action in placing the drywall next to the trenches constitutes negligence.

Fullerton's liability under the Act rests on proof that it committed a wilful violation of the Act while in some way being one of the persons having charge of the alteration. (Ill. Rev. Stat. 1975, ch. 48, par. 69.) The Illinois Supreme Court has declined to define the exact boundaries of a "violation" of the Act (see *Louis V. Barenfanger* (1968), 39 Ill. 2d 445, 236 N.E.2d 724) or "having charge of" the work. *Norton v. Wilbur Waggoner Equipment Rental & Excavating Co.* (1979), 76 Ill. 2d 481, 394 N.E.2d 403.

■■ A violation is measured against the standard of safety set by section 60 of the Act requiring a scaffold to be "safe, suitable and proper" as to give a worker "adequate protection." (Ill. Rev. Stat. 1975, ch. 48, par. 60.) Whether particular conduct violates the Act, therefore, depends upon whether that conduct contravenes the purpose of the Act to provide a safe work area. (*Barenfanger.*) Defects in the scaffold itself (*Fetterman v. Production Steel Co.* (1954), 4 Ill. App. 2d 403, 124 N.E.2d 637), improper safety procedures regarding its use (*Schultz v. Henry Ericsson Co.* (1914), 264 Ill. 156, 106 N.E. 236), the unsuitability of the particular device to its task (*Pantaleo v. Gamm* (1969), 106 Ill. App. 2d 116, 245 N.E.2d 618), or the creation of a hazardous condition in the work area (*Burke v. Illinois*

*Power Co.* (1978), 57 Ill. App. 3d 498, 373 N.E.2d 1354) all have been held to be violations of the Act under certain circumstances.

Similarly, the meaning of the term "having charge of" is also generic, and "determined by the associations and circumstances surrounding its use." (*Larson v. Commonwealth Edison Co.* (1965), 33 Ill. 2d 316, 321-22, 211 N.E.2d 247, 251; see also *Norton; Emberton v. State Farm Mutual Automobile Insurance Co.* (1978), 71 Ill. 2d 111, 373 N.E.2d 1348.) It does not necessarily imply more than "to have care of" as assessed within the totality of the circumstances of the case:

> "[C]onsistent with its beneficent purpose of preventing injury to persons employed in the extra-hazardous occupation of structural work, the thrust of the statute is not confined to those who perform, or who supervise, or control, or who retain the right to supervise and control the actual work from which the injury arises, but, to insure maximum protection, is made to extend to the owners and others who have charge of the erection or alteration of any building or structure." *Norton,* 76 Ill. 2d 481, 489, 394 N.E.2d 403, 407, quoting *Larson,* 33 Ill. 2d 316, 322, 211 N.E.2d 247, 251.

■ Recently, in *Norton,* the Illinois Supreme Court emphasized the expansiveness ·of the concept of having charge of the work. There, the court noted that even in the absence of evidence of retention of supervision or control over the work, a party with a general familiarity with construction methods, specific knowledge of the problem in question, some control over some of the work at the jobsite and in the position to have knowledge of "some deviation" in the work and the ability to alleviate it either at his own direction or through another could be one "having charge of" an alteration for purposes of liability under the Act. See *Norton,* 76 Ill. 2d 481, 491, 394 N.E.2d 403, 408.

■■ Given the breadth of these guidelines, it is obvious that whether a party committed a violation of the Act while having charge of an operation remains preeminently a question for the trier of fact and thus, such a case is rarely disposed of in a summary judgment procedure. (*Norton.*) Summary judgment in favor of a defendant is permitted only when there are no facts in the record which could support any of these broad constructions. (See, *e.g., Carruthers v. B. C. Christopher & Co.* (1974), 57 Ill. 2d 376, 313 N.E.2d 457.) In applying the above standards here, we believe that Fullerton has not met this test, and in assessing the totality of the circumstances we find that there are genuine issues of material fact as to whether Fullerton committed a violation of the Act while having charge of the work which caused Alfano's injuries.

There is evidence in the record which could be construed to show that Fullerton was responsible for the drywall and its placement next to

the trenches and that Fullerton was aware of the danger this caused. It is not unreasonable to infer from this that the position of the drywall created a hazardous condition at the work site or impaired the safe operation of Alfano's scaffold or that it forced Alfano to erect a defective scaffold or to use a device unsuitable to its task. Such a demonstration can be considered a violation of the Act. *Burke.*

The evidence also can be interpreted to indicate that Fullerton was familiar with construction methods, had control over part of the work in the area, and knew in particular of the potential hazard in the structural work about to commence. Further, it can be inferred, from Fullerton's control of the drywall, that it was in a position to alleviate the hazard or have another do so. Since such inferences are possible, under the standards in *Norton,* we cannot rule that as a matter of law Fullerton was not one of the persons having charge of the work.

We must also reverse the order of summary judgment as it pertains to the question of negligence. This issue was not argued in the trial court and on appeal Fullerton contends that the order should stand first, because as a matter of law the placement of the drywall alone does not constitute the proximate cause of Alfano's injuries and second, because as a matter of law Alfano was contributorily negligent.

Fullerton characterizes the placement of the drywall as at most creating a dangerous condition and suggests that an intervening, independent act caused Alfano's injuries. In *Felty v. New Berlin Transit, Inc.* (1978), 71 Ill. 2d 126, 374 N.E.2d 203, the supreme court emphasized that issues of proximate cause are ordinarily to be determined by a trier of fact, and particularly in cases where a defendant alleges an intervening force acted upon a condition it created, the foreseeability of that force is a fact question to be evaluated by a jury.

In this case the record is unclear as to the actual cause of the accident. It may be possible that some other agent independently precipitated the injury. But since it is also reasonable to infer that the drywall was a necessary contributing factor to Alfano's injuries caused by the foreseeable intervention of another force, summary judgment is inappropriate. See also Illinois Pattern Jury Instruction, Civil No. 15.01 (2d ed. 1971).

Similarly, Fullerton's assertion of contributory negligence is not conclusive. It is true that under some circumstances a workman's voluntary encounter with a known danger at the jobsite has been held to be contributory negligence. (*O'Leary v. Siegel* (1970), 120 Ill. App. 2d 12, 256 N.E.2d 127; *Fore v. Vermeer Manufacturing Co.* (1972), 7 Ill. App. 3d 346, 287 N.E.2d 526; *Mundt v. Ragnar Benson, Inc.* (1974), 18 Ill. App. 3d 758, 310 N.E.2d 633, *aff'd* (1975), 61 Ill. 2d 151, 335 N.E.2d 10.) But in each of those cases, the workman's knowledge of the danger was

particular and derived from repeated exposure to the hazardous condition (*Fore*; *Mundt*) or the fact that the workman himself caused the danger to exist. (*O'Leary.*) The factual record before us is meager concerning the extent of Alfano's knowledge of the danger involved in using the scaffold. In such a situation, whether his actions can be labeled contributorily negligent is a matter best left to the trier of fact.

The judgment of the circuit court in favor of Fullerton is reversed and the cause remanded for consideration not inconsistent with this decision.

Reversed and remanded.

JOHNSON and ROMITI, JJ., concur.