WERNER EWERT, JR., Plaintiff-Appellant, *v.* WIEBOLDT STORES, INC., Defendant-Appellee.

First District (2nd Division)   No. 79-368

Opinion filed May 27, 1980.

Ronald G. Fleisher, of Karlin and Fleisher, of Chicago (Sidney Z. Karasik, of counsel), for appellant.

French & Rogers, of Chicago (Richard G. French and Michael C. Kominiarek, of counsel), for appellee.

Mr. JUSTICE STAMOS delivered the opinion of the court:

Plaintiff, Werner Ewert, was seriously injured when he fell while washing windows on the Wieboldt Department Store building located in downtown Chicago. He filed a complaint in the circuit court against Wieboldt Stores, Inc., alleging that their violation of the Structural Work Act (Ill. Rev. Stat. 1977, ch. 48, par. 60 *et seq.*) caused his injuries. The trial court denied Wieboldt's motion for a directed verdict at the close of plaintiff's case and defendants Wieboldt and General Window Cleaning

Company (impleaded by Wieboldt on a third-party complaint) presented their defense. When the jury could not arrive at a verdict, the court declared a mistrial. Following Wieboldt's motion for the trial judge to reconsider his denial of the directed verdict or, in the alternative, to enter a judgment notwithstanding the "disagreement" of the jury, the trial court entered judgment in favor of defendant. Plaintiff then filed a post-trial motion for the trial judge to reconsider his judgment and, when it was denied, took this appeal. The issues raised are whether the evidence presented at trial was sufficient to raise a jury question under the Structural Work Act (the Act) and whether plaintiff complied with procedural guidelines in perfecting his appeal. Defendant has raised this second issue on appeal, as it did at an earlier date, seeking to preclude plaintiff's appeal. We have previously ruled on the matters raised, and since defendant has presented no persuasive reason to change that decision, we decline to reconsider our ruling. Thus only the Structural Work Act issue remains to be decided.

At the time of the accident plaintiff was 35 years of age and employed as a commercial window washer by General Window Cleaning Company. He had been a window washer for approximately 15 years and had recently been nominated for foreman. Plaintiff had been washing windows on the Madison and State Street sides of the Wieboldt store for several days and, on the day of the accident, he was assigned to the Wabash Street side of the building to finish those windows designated by Wieboldt personnel as missed or inadequately cleaned. He testified that he went to a bay of four windows on the 14th floor, Wabash Street side of the building. He was unable to open the first two windows so he proceeded to the third, which he was able to open. Plaintiff had brought his own equipment, a belt fitted with two terminals, one on each end, which would fit into the anchored hooks on each side of the Wieboldt windows. When securely attached, the connection of the terminals to the anchor would act much as a scaffold to secure plaintiff's safety. He also testified that prior to stepping out through the third window, he was warned by his foreman, Ted Barr, that some of the anchors were bad and might pull out of the wall.

He climbed through the window and connected his belt, sensing that the terminal connections were "sloppy," with considerable movement within the attachment. After completing the first window, he moved to one of the stuck windows and, while still attached to the left anchor, attempted to connect his belt to the anchor on the right side of the next window. He testified that he missed the anchor on the first attempt and then, feeling a tug, saw the terminal detach from the anchor. He fell 15 to 20 feet to a lower roof, sustaining extensive injuries.

On cross-examination plaintiff was questioned about two earlier

occasions when he stated, inconsistent with his present testimony, that the anchor had pulled out of the wall. As he explained during direct testimony, plaintiff reiterated that, on at least one of the occasions, he had been on medication for the pain of the accident and had simply confused the two words, terminal and anchor. He also was questioned about inconsistencies in his written statements regarding where he worked prior to his employment with General and the amount of salary he earned on a weekly basis.

The second witness for plaintiff was Carl Pedersen, president of General, who identified a letter which set forth the terms and conditions of the window washing agreement with Wieboldt. The letter stipulated that "General Window Cleaning Company will furnish all labor, supervision, equipment and materials to do the above [window washing]." Wieboldt accepted the proposal on those terms. The testimony of two doctors was presented to establish damages and the final witness, plaintiff's expert, Stanley Sedavy, was called.

Sedavy stated that he was a consulting engineer for Polytechnic, Inc., and was involved in "accident investigation, product safety studies, and general industrial consulting." Sedavy had examined various anchors on the Wieboldt building windows and discovered that two sizes were in use. He utilized the recommendations of the American National Standards Institute in his investigation and found that the terminals on the belt worn by plaintiff complied with those standards. Similarly, the anchors on the majority of the windows he examined met the safety standards. He discovered that although none of the anchors were broken or loose, some of those on the Wabash side, including the one from which plaintiff's terminal purportedly slipped, were smaller in size (.550" to .560") than the ANSI recommended.

Sedavy testified that in his opinion "the hook on the building being considerably undersize as compared to the hook on the belt or the channel on the belt terminal that there was not a secure engagement made and the belt terminal would come off the window hook." His testimony also illustrated how it might have happened:

> "Q. Mr. Sedavy, if you had a terminal such as this one with this size channel, if you had a hook with a head which was smaller than .70, let's say it was .60, do you have an opinion based upon a reasonable degree of scientific certainty as to whether or not that particular terminal could come off of that hook with that size head without touching the safety spring?
>
> A. With a head of .60, I would not think that under most conditions the terminal would come off of the anchor.
>
> \* \* \*
>
> Q. [What about with] .50?

A. At .50, it would or would not come off with a straight type pull, depending on the actual dimensions. If it was slightly larger or smaller, if the two were the same, some physical force would be required to part it, but it still would come off.

Q. When you say a physical force, straight out pull?

A. Yes, straight out pull would part it in that case.

Q. How about twisting or turning?

A. Twisting or turning certainly would.

Q. Mr. Sedavy, what is the dimension of plaintiff's exhibit No. 7, the hook in question?

A. It's .550.

Q. .550, would it come off of a terminal with this size channel?

A. Yes, it could.

Q. Without removing the safety spring?

A. Yes, it could.

Q. In what fashion could that happen?

A. By a rotational mode [sic], by a terminal rotating to the inward part of the anchor, it would slide right off the hooks of the anchor.

* * *

Q. Mr. Sedavy, when a window washer could be traveling from one day [sic] to the next, and if he was holding on to his terminal, and he reached around a window in order to connect up to the next window but missed and came back, would there be any twisting motion of his left hand on the left terminal on the left channel?

* * * [objections overruled]

A. Yes, it is possible that there would be—highly probable that there would be twisting motion as he would step backward or step to the side, to the inward side again.

Q. Mr. Sedavy, in your opinion, would that motion be sufficient without touching the safety latch to come—have this terminal pop off of that hook?

A. Yes, it would."

Sedavy then took the terminal and anchor in his hands and illustrated how they could detach with a certain movement.

At the close of plaintiff's case, defendant's motion for a directed verdict was denied. Defendant's first witness was Ted Barr, plaintiff's foreman at General. He stated that there were two sizes of anchors on the Wieboldt building and General had belts with terminals which would fit each type. Barr went to Wieboldt's after plaintiff's accident and, using the same anchors and belt which purportedly disengaged, tested the belt and hooks with no adverse results.

Defendant also called Warren Richardson, Wieboldt's purchasing

manager. He testified that, to his knowledge, Wieboldt had neither replaced nor ordered replaced any of the anchors on the outside walls. He also stated that Wieboldt did not normally inspect the anchors and relied on the window washers to report any problems.

On cross-examination, he admitted that, under the contract, Wieboldt retained the right to inspect the work, to recall General to redo the work, to stop any assignments or subletting of the work by General, to terminate the contract if time requirements were not fulfilled, to remove General from the premises if the work was not satisfactorily performed, to remove General from the job if skilled workmen, proper materials, or cooperation with other contractors were not supplied, and to designate what areas General's workmen and materials could occupy. He also stated that when Wieboldt bought the store in 1960, the store was inspected by a management team although he did not know to what extent. At the close of Richardson's testimony, defendant rested its case and once again moved for a directed verdict. The motion was denied and the cause submitted to a jury. When the jury reported that there was no hope of reaching a verdict, the court declared a mistrial. Wieboldt once again moved for judgment, contending that plaintiff had failed to make a prima facie case to cause Wieboldt to be liable under the Structural Work Act. The trial court reversed its previous rulings and entered judgment for defendant.

Defendant's liability to plaintiff under the Act rests on proof that the activities involved are covered under the Act; that the device used was unsafe or unsafely placed; that the violation was wilful; and that the violation was a proximate cause of plaintiff's injuries. Further, plaintiff must prove that defendant was one who had "charge of" the activities giving rise to the claim. (See Ill. Rev. Stat. 1977, ch. 48, pars. 60, 69.) Defendant here contends that plaintiff did not meet his burden in three ways—he did not establish: one, that Wieboldt was in charge of the window-washing activities; two, that the violation was wilful; and three, that defendant's "violation" was the proximate cause of the accident. Accordingly, defendant argues that judgment was properly entered in its behalf. We will consider defendant's arguments in reverse order, beginning with proximate cause.

■■ It is well established that neither contributory negligence nor assumption of risk is an affirmative defense to a claim arising under the Act (see *Gundich v. Emerson-Comstock Co.* (1960), 21 Ill. 2d 117, 171 N.E.2d 60; *Hernandez v. Power Construction Co.* (1976), 43 Ill. App. 3d 860, 868, 357 N.E.2d 606, *aff'd* (1978), 73 Ill. 2d 90, 382 N.E.2d 1201), absent special circumstances not arising in the instant case. (*Cf. Mundt v. Ragnar Benson, Inc.* (1974), 18 Ill. App. 3d 758, 310 N.E.2d 633, *aff'd* (1975), 61 Ill. 2d 151, 335 N.E.2d 10 (particular knowledge of danger on

workman's part combined with repeated exposure to hazardous condition held to be contributory negligence, barring recovery on common law negligence count; trial court's denial of leave to amend complaint to allege a Structural Work Act violation upheld).) Rather, if plaintiff's injuries were "occasioned by [a] wilful violation of [the] act" then a cause of action "accrue[s] to the party injured." (Ill. Rev. Stat. 1977, ch. 48, par. 69.) Thus it is a factual question to be determined by all attending facts and circumstances whether defendant's alleged violation was the proximate cause of plaintiff's injuries. (*Kjellesvik v. Commonwealth Edison Co.* (1979), 73 Ill. App. 3d 773, 776-77, 392 N.E.2d 116.) Further, it is fundamental that there may be more than one proximate cause of an injury. Liability will attach if the defendant's conduct contributed in whole or in part to the plaintiff's injury, so long as it was one of the proximate causes of injury. (*Nelson v. Union Wire Rope Corp.* (1964), 31 Ill. 2d 69, 88, 199 N.E.2d 769 (negligence law).) In the instant case, the question of proximate cause evolves to whether the anchor hooks on the Wieboldt building were a contributing factor which occasioned plaintiff's accident. Plaintiff presented evidence, his own testimony and that of his expert, that the anchor could become involuntarily disengaged from the belt terminal, causing plaintiff to fall. He also testified that he had previously worked on only that portion of the building which had conforming hooks. Defendant contradicted plaintiff's trial testimony that the hook disengaged involuntarily with his earlier statements giving a different version, that the anchor was pulled from the wall. Nevertheless, the proximate cause of an injury, here whether the anchors were undersized and unsuited as scaffolding, resulting in plaintiff's fall, or whether plaintiff was voluntarily disengaged prior to the fall and was endeavoring to step across the space between the windows when he fell, is a question of fact for the jury. (See *Juliano v. Oravec* (1973), 53 Ill. 2d 566, 571, 293 N.E.2d 897.) Plaintiff's version of the accident, especially where corroborated by expert testimony, was not so inherently improbable as to fail to allow "reasonable men [to] disagree on the inferences to be drawn therefrom" and thereby to negate proximate cause as a matter of law. (See Ring, *The Scaffold Act: Its Past, Present and Future,* 64 Ill. B.J. 666, 675 (1976).) Thus, plaintiff presented sufficient evidence to create a factual issue for the jury on proximate cause.

■■ The second issue is whether defendant's "violation" was wilful, as required for civil liability to individual plaintiffs under the Act. (Ill. Rev. Stat. 1977, ch. 48, par. 69; See also Ring, at 674.) Defendant is deemed to have knowledge of that which it reasonably should have known (*Juliano*), and, as used in the Act, the word "wilfully" is synonymous with "knowingly"; thus, to constitute a wilful violation it is not necessary that

there have been a reckless disregard of the provisions of the Act. (*E.g., Doherty v. National Casting Division* (1972), 6 Ill. App. 3d 329, 334, 285 N.E.2d 537.) If defendant knew or could have reasonably discovered, in the exercise of reasonable care, that the undersize of some of the hooks presented a dangerous condition, then the violation was wilful and liability exists under the Act. (*Domena v. Prince* (1977), 52 Ill. App. 3d 462, 467, 367 N.E.2d 717; *Hernandez v. Power Construction Co.* (1976), 43 Ill. App. 3d 860, 867, 357 N.E.2d 606, *aff'd* (1978), 73 Ill. 2d 90, 382 N.E.2d 1201.) Evidence was presented that safety standards from 1933 to the present recommended the larger size anchor, that Wieboldt had the larger size on most of its windows, that the difference in the two anchors was apparent to the naked eye, that an inspection had been made prior to the purchase of the building, and that Wieboldt had a maintenance department among whose duties would be to supervise the repairs of the building. In contrast, Wieboldt maintained that it did not inspect the outside of the building and did not know that some of the anchors were undersize. It is readily apparent that a question of fact whether Wieboldt knew or in the exercise of reasonable care should have known of the danger created by the different sized anchors arose from the evidence. Once again, this question of fact was for the jury to decide, and did not so overwhelmingly favor defendant as to allow the judge to determine it as a matter of law. See *Doherty v. National Casting Division* (1972), 6 Ill. App. 3d 329, 285 N.E.2d 537; *Kjellesvik v. Commonwealth Edison Co.* (1979), 73 Ill. App. 3d 773, 392 N.E.2d 116; see also *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504.

■ The final element was whether Wieboldt was one of the parties "having charge of" plaintiff's window washing so as to be liable under section 9 of the Act. (Ill. Rev. Stat. 1977, ch. 48, par. 69.) Wieboldt contends that it hired General as an independent contractor and in no way exercised the requisite control or supervision which would make it liable to plaintiff under the Act. Although our supreme court has declined to define the exact meaning of "having charge of," and instead has followed a case by case approach, it has repeatedly reaffirmed the question as particularly one for the jury to decide. *E.g., Voss v. Kingdon & Naven, Inc.* (1975), 60 Ill. 2d 520, 525, 328 N.E.2d 297; see also *Alfano v. Board of Trade* (1979), 76 Ill. App. 3d 248, 251, 395 N.E.2d 384.

The meaning of the term "having charge of" is determined by the "associations and circumstances surrounding its use." (*Larson v. Commonwealth Edison Co.* (1965), 33 Ill. 2d 316, 321-22, 211 N.E.2d 247.) It is manifested by evidence which reflects that the defendant was directly connected with structural activities. (*Gannon v. Chicago, Milwaukee, St. Paul & Pacific Ry. Co.* (1961), 22 Ill. 2d 305, 175 N.E.2d

785.) It is a broad generic term encompassing supervision and control but not concluded by those factors. (See *Larson.*) Accordingly, there may be more than one person in charge (*e.g., Kennerly v. Shell Oil Co.* (1958), 13 Ill. 2d 431, 150 N.E.2d 134), so that General's position as primary employer in no way negates the possibility of Wieboldt's being found to be "in charge." It is the totality of the circumstances upon which the determination must be based. *Norton v. Wilbur Waggoner Equipment Rental & Excavating Co.* (1979), 76 Ill. 2d 481, 490, 394 N.E.2d 403.

Defendant has attempted to categorize its position as that of mere ownership, which without more would absolve it from liability under the Act. (*Gannon,* at 323.) The record here, however, reflects a degree of ongoing participation in the window washing activity which could justify a factual finding that defendant was in charge of the work. Among other things, defendant reserved the rights to stop and to inspect the work, to order it redone, and to restrict it to certain areas. Such factors are indicative of a direct connection with plaintiff's activities. (See *McInerney v. Hasbrook Construction Co.* (1975), 62 Ill. 2d 93, 101, 338 N.E.2d 868.) But the factor which most removes defendant from the status of "mere ownership" to that of "in charge of" is the furnishing of the inappropriate anchors. (See *Pankey v. Hiram Walker & Sons, Inc.* (S.D. Ill. 1958), 167 F. Supp. 609.) We recognize that an owner or lessor of defective scaffolding, here the anchoring hooks, is not *presumed* to have the direct connection with construction activities which would make it ipso facto "in charge of." (See *Vykruta v. Thomas Hoist Co.* (1966), 75 Ill. App. 2d 291, 221 N.E.2d 99.) Where, though, as here, ownership is combined with furnishing and maintaining the scaffolding (anchors) and with the other factors enumerated above, a factual question arises sufficient for a jury to find defendant "in charge of" plaintiff's work. See *Emberton v. State Farm Mutual Insurance Co.* (1978), 71 Ill. 2d 111, 373 N.E.2d 1348; *McNellis v. Combustion Engineering, Inc.* (1974), 58 Ill. 2d 146, 317 N.E.2d 573.

In conclusion, under the *Pedrick* standard we cannot say that the evidence on any of the three factors challenged (proximate cause, wilful violation, or "in charge of") so overwhelmingly favored defendant Wieboldt that no contrary finding could ever stand. And parallel to the most recent supreme court case on the issue whether an owner is also in charge of the operation for purposes of the Act (*Norton v. Wilbur Waggoner Equipment Rental & Excavating Co.* (1979), 76 Ill. 2d 481, 491, 394 N.E.2d 403), the factors in the case at bar—right to inspect, presence at the work site, right to have work redone, and right to terminate the work—when combined with ownership of the building and provision of the scaffolding, were such that reasonable people could differ on the key issue of "in charge of." Accordingly, the finding of the trial court in favor of defendants is reversed and the cause is remanded for a new trial to

allow these issues to be determined by a trier of fact. See also *Alfano v. Board of Trade* (1979), 76 Ill. App. 3d 248, 252, 395 N.E.2d 384.

Reversed and remanded.

PERLIN, P. J., and JIGANTI, J., concur.