JAMES CLINTON FOGARTY, Plaintiff-Appellant, v. PARICHY ROOFING COMPANY *et al.*, Defendants-Appellees.

First District (1st Division)   No. 87—3045

Opinion filed September 30, 1988.—Rehearing denied October 25, 1988.

Law Offices of William E. Hourigan, P.C., of Wheaton, and Dennis E. Carlson, of Chicago (William E. Hourigan, of counsel), for appellant.

Baker & McKenzie, of Chicago (Francis D. Morrissey, Harry J. O'Kane, John C. Filosa, and Oran F. Whiting, of counsel), for appellees.

JUSTICE QUINLAN delivered the opinion of the court:

The plaintiff, James Fogarty (Fogarty), was injured on November 18, 1982, when he fell from a residential roof on which he was working as an employee of Vernon Hoffswell (Hoffswell). Hoffswell had an oral agreement with the defendant, Parichy Roofing Company (Parichy Company),[1] to reshingle a home in River Forest, Illinois. In plaintiff's one-count complaint, it was alleged that defendant Parichy Company was liable for plaintiff's injuries under the provisions of the Structural Work Act (Ill. Rev. Stat. 1985, ch. 48, par. 60 *et seq.*). Fogarty appeals from the judgment entered in favor of the defendant, Parichy Company, following a jury trial on his Structural Work Act complaint.

In order to establish the defendant's liability under his Structural Work Act (Act) claim, the plaintiff was required to show that Parichy Company had the responsibility for the reshingling of the roof and that Parichy Company willfully violated the Act while in charge of this work. (Ill. Rev. Stat. 1985, ch. 48, par. 60.) The parties agree that during the reshingling of the roof, Theodore Parichy, the secretary and treasurer of Parichy Roofing Company and the manager of the family-owned business, made periodic visits to jobsites to observe the progress from the ground but, according to his testimony, he was not "looking for any problems" on those visits. Parichy stated that he visited this jobsite on only two occasions before plaintiff's fall. Parichy's testimony and the testimony of Michael Kiegley established that Parichy Company did not participate in the roofing activities, was not

---

[1]Plaintiff initially sued the party in possession of the residence where the accident occurred, Roy Campbell, and any other, at that time, unknown owners of the property. Subsequent discovery revealed that Roy Campbell was the sole owner of record of the property. Prior to trial, the trial court granted summary judgment in favor of Campbell, finding that he was not liable. Campbell is not a party to this appeal.

responsible for safety at the site, and was not empowered under the agreement to unilaterally change orders or to stop the work.

It is also undisputed that Hoffswell instructed his employees to place a 30-foot ladder against the side of the house, construct a platform from two-by-fours, and then nail it to the edge of the roof to prevent workers and tools from falling off the roof. Additionally, a six-foot ladder was braced against the platform's edge, as a crawling board, to permit access to the roof peak. It was as the plaintiff was climbing the six-foot ladder, carrying a load of roof shingles on his shoulder, that he fell onto the edge of the platform and then fell from there to the ground. The plaintiff did not know whether it was a broken ladder rung or a loss of balance that precipitated his fall.

At trial, the defense theory was that Parichy Company could not be liable, first, because it was not in charge of the work as required under the Act, and, second, because it was plaintiff's congenital condition that caused plaintiff to lose his balance and fall, and that this preexisting condition caused his disabilities. Parichy Company contended that it was Hoffswell who had complete control over the work and who was responsible for providing all necessary safety equipment and supervision. Parichy Company argued that its only role was to deliver materials to the jobsite through a jobber each morning before the work began, and that it never supervised the work of Hoffswell's employees. At trial, the plaintiff called the following witnesses: Michael Kiegley, plaintiff's co-worker and a witness to the accident; Vernon Hoffswell, plaintiff's employer; Theodore Parichy, secretary and treasurer for defendant, as an adverse witness; John Shea and Juan Angelats, the treating physicians; and Robert Krause, a safety expert. At trial, the court permitted the plaintiff's safety expert to testify to the safety standards required under the Occupational Safety and Health Act (OSHA) (29 U.S.C. §651 *et seq.* (1985)), but prohibited him from testifying to the safety condition of a hypothetical roof, similar to the roof from which the plaintiff fell, as measured by these standards. The expert was, nevertheless, allowed on cross-examination to state, over the plaintiff's objection, that to his knowledge, OSHA standards applied only to employers and not to independent contractors.

After the plaintiff rested, the defendant called its expert medical witness, Dr. Leonard Smith, and plaintiff's employment counsel, Michael Mooney. Dr. Smith testified concerning the plaintiff's present physical condition. In his deposition 1½ years before trial, Dr. Smith had given an opinion limited to his orthopedic findings, but at trial he began to testify to his neurological findings. The plaintiff objected, asserting surprise that these opinions had not been previously disclosed.

The court, as a curative measure based upon the plaintiff's representation to the court that he had propounded Rule 220 interrogatories to the defendant's expert, recessed the trial so that plaintiff could again depose Dr. Smith. (See 107 Ill. 2d R. 220.) At the in-court deposition, Dr. Smith stated that he had not previously reviewed plaintiff's medical records and had only been asked to render the previously undisclosed opinions on the third day of trial. Subsequent to this deposition during trial, defense counsel showed Dr. Smith the plaintiff's medical records which had already been admitted into evidence during the plaintiff's case. When Dr. Smith again took the witness stand, he testified that in his opinion plaintiff's spinal cyst was preexisting and had not been caused by the accident, as the plaintiff alleged in his complaint.

Mr. Mooney, plaintiff's employment counselor, testified that the plaintiff had come to him following the accident for assistance in finding employment. Mr. Mooney stated that the plaintiff told him in November 1983 that he had no difficulty in driving and in December 1983 the plaintiff told Mooney that he was able to perform all the activities of daily living and had not experienced any impairment of his sexual function. Mr. Mooney further testified that the plaintiff had expressed an interest in pursuing a legal career and was not interested in a long-term commitment with his former employer should he be reemployed.

In his closing argument, plaintiff, nevertheless, continued to assert that Parichy Company was the responsible party, under the Structural Work Act, for his injuries and asked the jury to return a verdict of $3,972,601.39 in his favor. When plaintiff attempted to argue that although Vernon Hoffswell was a subcontractor and, thus, not an independent contractor, the defendant objected and a boisterous sidebar was held outside the presence of the jury. Thereafter, upon returning to the courtroom, the trial judge instructed the jury to disregard the references of counsel to independent contractors and subcontractors, directed counsel to complete his argument in 18 minutes, and did not further comment on the sidebar. Subsequently, the trial court instructed the jury concerning the law, the plaintiff's theory, and the defendant's theory and further directed the jury not to consider the damages issue unless it had determined that the defendant was in charge of the work at the time of the accident and that the defendant had wilfully violated the statute. The jury returned a verdict for the defendant. The plaintiff moved for a new trial or judgment notwithstanding the verdict, and his motion was denied by the trial court. The plaintiff then took this appeal, and, for the reasons set forth below, we affirm.

In his appeal to this court, the plaintiff contends that certain trial court errors denied him a fair trial and those errors mandate either a reversal of the verdict in defendant's favor or require, at least, a new trial. The plaintiff alleges that the trial court erred in its refusal to direct findings in his favor regarding certain "judicial admissions" contained in the defendant's deposition; in its ruling which barred the plaintiff from inquiring of the defendant whether he had the right to stop work or to enforce safety rules on prior jobs; and in its denial of the plaintiff's motion for a directed verdict on the basis that defendant was, as a matter of law, in charge of the work. The plaintiff also alleges it was error to refuse plaintiff's proffered instruction concerning the nondelegability of duties imposed under the Structural Work Act and to further instruct the jury that OSHA does not apply to general contractors. Other alleged errors raised by the plaintiff include the trial court's ruling which prevented plaintiff's safety engineer from testifying concerning the ultimate issue on the condition of safety on the roof at the time plaintiff was injured; its ruling which permitted Dr. Smith, the defendant's expert, to testify to his new opinions and its ruling whereby it refused to tender the jury his proffered Illinois Pattern Jury Instructions (IPI) instruction concerning the propriety of awarding damages for the aggravation of preexisting conditions; its ruling which allowed the defendant to improperly impeach the plaintiff; and, finally, its ruling which denied plaintiff's motion for judgment notwithstanding the verdict or, in the alternative, for a new trial. These and numerous other trial court errors, the plaintiff asserts, although not reversible error standing alone, cumulatively require reversal of the decision below.

■ Initially, plaintiff complains that the trial court erred in its denial of his motion for a directed finding that "judicial admissions" had been made by the defendant in his deposition. The plaintiff alleged that the following questions and answers from Mr. Theodore Parichy's discovery deposition should have been treated as conclusive admissions of liability:

"Question: When you go out and make those visits of Mr. Hoffswell's jobs did you ever look not only to see how the work was, but also to see whether or not the job was being performed in a safe manner?

Answer: That's right.

Question: Did you feel you had the authority [to tell Hoffswell] to stop work?

Answer: I had the authority. [Hoffswell], he has to do it or else, yes."

The statement of a party in a discovery deposition is not, unlike a judicial admission, normally conclusive, but, like any evidentiary admission, may be contradicted at trial. (E. Cleary & M. Graham, Handbook of Illinois Evidence §§ 802.11, 802.12 (4th ed. 1984).) Thus, even assuming Theodore Parichy's deposition testimony constituted an admission, at best it created a factual dispute to be resolved by the trier of fact. (*Lyle v. Sester* (1981), 103 Ill. App. 3d 208, 214, 430 N.E.2d 699, 703.) Accordingly, we find no basis for plaintiff's assertion that the defendant's liability was established as a matter of law, and, thus, we find no error in the trial court's denial of the plaintiff's motion for directed findings on this issue. See *Roedner v. Central Illinois Public Service Co.* (1983), 117 Ill. App. 3d 81, 84, 452 N.E.2d 842, 844.

■ Plaintiff further argues that he was improperly prevented from asking the defendant whether he was in charge of the work which plaintiff performed. The trial court had sustained objections to this line of questions because, the court found, these questions called for a legal conclusion and also because the plaintiff had failed to sufficiently establish the oral contract between the defendant and Hoffswell. Plaintiff asserts that, in any event, the court erred when it barred him from inquiring of the defendant, Theodore Parichy, if he had the right to stop work or to enforce safety on prior jobs.

In addressing this argument, the plaintiff initially notes that the trial court granted considerable time and latitude to the plaintiff in his attempt to establish the terms of the oral contract between the defendant and the plaintiff's employer. Only when the plaintiff was unable to establish any specific obligations under the contract concerning safety on the job did the court properly rule that the plaintiff had insufficiently established a foundation to ask any questions concerning who was in charge and responsible for safety enforcement. *Vandevier v. Mulay Plastics, Inc.* (1985), 135 Ill. App. 3d 787, 482 N.E.2d 377.

Concerning the second part of plaintiff's contention, we find no authority, and the plaintiff has cited none, which allows the admission of evidence of safety violations on prior jobs. The prior incident which the plaintiff sought to introduce occurred on a different roofing job that Hoffswell was doing for Parichy Company. There, Theodore Parichy had observed a ladder which needed to be tied down to the gutter because of high winds and there he told Hoffswell to tie it down. However, testimony concerning prior occurrences is neither relevant nor admissible, unless the occurrences are reasonably similar. (*Grant v. Joseph J. Duffy Co.* (1974), 20 Ill. App. 3d 669, 678, 314 N.E.2d 478, 484-85.) Here there was no evidence of any specific safety obligations under the contract or that the responsibilities were in any way the same

or similar on both jobs. Additionally, there was no evidence that the prior occurrence involving a ground ladder and windy weather conditions was not just an unusual, isolated incident. It was not reasonably similar to the incident here, which occurred on a rooftop under normal working conditions. Accordingly, we find the trial court ruling against the admission of this evidence was not an abuse of discretion.

■ The plaintiff also claims error occurred when the trial court denied his motion for a directed finding that the defendant was in charge of the work. Factors which courts have found to be helpful in determining whether a party was in charge of the work include: "(1) supervision and control of the work, or the retention of the right to supervise and control it; (2) constant participation in ongoing activities at the construction site; (3) supervision and coordination of subcontractors; (4) responsibility for taking safety precautions at the job site; (5) authority to issue change orders; and (6) the right to stop the work." (*Lyle*, 103 Ill. App. 3d at 218, 430 N.E.2d at 707.) None of these factors, standing alone, is conclusive (*Lyle*, 103 Ill. App. 3d at 218, 430 N.E.2d at 707), and mere status as a general contractor will not, contrary to plaintiff's contentions, result in the imposition of liability under the Act. (*Cf. Norton v. Wilbur Waggoner Equipment Rental & Excavating Co.* (1979), 76 Ill. 2d 481, 486, 394 N.E.2d 403, 406.) Moreover, a simple inquiry into the progress of a job being performed by a subcontractor will not render the inquiring party liable. *Dean v. Talman Home Federal Savings & Loan Association* (1987), 163 Ill. App. 3d 800, 516 N.E.2d 951, *appeal denied* (1988), 119 Ill. 2d 555, 522 N.E.2d 1242.

The plaintiff's attempts to demonstrate that the defendant was in charge of the work here were unsuccessful. Fogarty was unable to establish the terms of the oral subcontract agreement in his direct examination of Theodore Parichy, and hence, was unable to show that the defendant either had safety supervisory duties or retained control of the work. During his examination of Parichy, the plaintiff requested and was granted three sidebars in which the trial court explained its rulings and the requirement that plaintiff lay a foundation for asking ultimate fact questions. Furthermore, even though in a sidebar, the court found that plaintiff was unable to establish that Parichy Company was contractually liable for safety or had contractually retained control over the work, the plaintiff could still have sought to elicit facts from which the jury might properly have drawn an inference that Parichy Company was in charge of plaintiff's work. However, the plaintiff did not do this either. The only evidence introduced as to defendant's contact with the work was that on two occasions prior to

the accident, Theodore Parichy stopped by the site and made a ground observation of the progress that had been made. Further, Parichy stated in his testimony that he could not unilaterally order changes in the work and that his authority was limited to refusing to pay Hoffswell if he was unsatisfied with the work, which is not the equivalent of the right to stop work. (See *Fruzyna v. Walter C. Carlson Associates, Inc.* (1979), 78 Ill. App. 3d 1050, 1058, 398 N.E.2d 60, 66.) Furthermore, there was no evidence that the defendant had any authority to stop the work, or that it was responsible for taking safety precautions, or that it was entitled to issue change orders. Hence, applying the factors set out in the *Lyle* case to the facts of this case, we find that the trial court properly refused to direct a verdict for plaintiff here because the question of who was in charge of the construction under the evidence here was, at most, a question of fact for the jury. See *Norton*, 76 Ill. 2d at 484, 394 N.E.2d at 405.

■ Next, plaintiff argues that the trial court erred in refusing to instruct the jury that the safety duties of the defendant as the general contractor are, under the Structural Work Act, nondelegable. Plaintiff's contention that the jury should have been instructed that safety duties under the Act are nondelegable is also contrary to the language of the statute itself and Illinois law. Section 9 of the Structural Work Act provides in relevant part: "Any owner, contractor, subcontractor, foreman or other person *having charge of* the erection, [or] construction *** of any building *** within the provisions of this act, shall comply with all the terms thereof ***." (Emphasis added.) (Ill. Rev. Stat. 1985, ch. 48, par. 69.) Hence, defendant had no duties under the Act unless he was in charge of the work. The case which plaintiff cites in support of his argument, *Gannon v. Chicago, Milwaukee, St. Paul & Pacific Ry. Co.* (1961), 22 Ill. 2d 305, 175 N.E.2d 785, is inapposite. In *Gannon* our supreme court rejected an argument analogous to plaintiff's argument here and held that liability under the Act was not imposed simply because of the defendant's status as a person named within the Act, *e.g.*, a contractor, but was dependent upon a showing that the person within the named class was actually in charge of the work. (*Gannon*, 22 Ill. 2d at 321, 175 N.E.2d at 792.) Further, *Gannon* rejected the notion that the duties imposed by the Act were nondelegable. Contrary to the plaintiff's assertions, we find that Parichy Company was entitled to delegate the safety duties. (*Cf. Clements v. Schless Construction Co.* (1972), 8 Ill. App. 3d 291, 296, 290 N.E.2d 21, 25.) The jury here found that the defendant was not in charge of the work and, hence, was not responsible for safety on the job. We believe that this finding is supported by the evidence.

■ The plaintiff also asserts that the trial court erred in instructing the jury that OSHA does not apply to general contractors and, thus, not to the defendant. Plaintiff contends the trial court committed error when it stated: "I further want to admonish you that the OSHA standard applies to employers and not to general contractors." The record itself, however, undermines plaintiff's contention. First, plaintiff stipulated that OSHA did not apply to general contractors and that the defendant was a general contractor. Second, plaintiff's contention that OSHA could apply to general contractors is premised on cases holding that the person in charge of the work may be liable for OSHA violations, whether he is the employer or not (*Darling v. Charleston Community Memorial Hospital* (1965), 33 Ill. 2d 326, 211 N.E.2d 253, *cert. denied* (1966), 383 U.S. 946, 16 L. Ed. 2d 209, 86 S. Ct. 1204; *LePage v. Walsh Construction Co.* (1984), 126 Ill. App. 3d 1075, 468 N.E.2d 509), and, as stated above, we believe there was, at least, a factual dispute here concerning whether the defendant was in charge of the work and that this dispute was properly resolved against the plaintiff by the jury.

Nevertheless, the plaintiff claims the Eighth Circuit Court of Appeals case of *Marshall v. Knutson Construction Co.* (8th Cir. 1977), 566 F.2d 596, supports his contention that a general contractor is required to enforce OSHA standards for the benefit of his subcontractor's employees. But, the holding in *Marshall* was premised on the fact that the general contractor there had a high "degree of supervisory capacity" over all of the subcontractors present at the work site and had established an inspection procedure for the site. (*Marshall*, 566 F.2d at 601.) Hence, we find *Marshall* unpersuasive and inapplicable here, since Parichy Company had no formalized inspection procedure and no control of the work, and therefore, it could not reasonably have been expected to prevent or abate a particular OSHA violation.

Plaintiff also complains that he was not permitted to show that Hoffswell's employees were really the defendant's employees. The trial court here advised the plaintiff after he had rested his case that he could not argue that Hoffswell was an employee of the defendant because he had previously stipulated that Hoffswell was a subcontractor, independent of the defendant. We agree with the trial court's directive, since to allow the plaintiff to change his theory of the case during trial, under the circumstances here, would be unfair and improper. Accordingly, we find the trial court properly refused to give an instruction on OSHA standards which, we believe, would have tended only to confuse the jury under these circumstances, where there was no evidence that the standards applied to the defendant.

■ Next, plaintiff asserts that the trial court erred in ruling that his safety expert could not give his opinion concerning whether a ladder resting on a roof bracket, with the type of safety devices used at this jobsite, was the safest means of support. The plaintiff contends that the court sustained defense objections to this testimony based on its erroneous reasoning that only the jury may decide this ultimate fact. Citing *American College of Surgeons v. Lumbermens Mutual Casualty Co.* (1986), 142 Ill. App. 3d 680, 491 N.E.2d 1179, the plaintiff contends that testimony by an expert on the ultimate issue rule is no longer prohibited and that the trial court's improper ruling on that issue prevented him from proving liability and adversely affected his credibility with the jury. The record reveals that the trial court responded to defendant's objections and during a sidebar stated that it was going to sustain the defense objections to this line of questioning, because the issue here was whether, in the expert's opinion, a specific safety standard had been violated and not whether the expert believed the support system used by plaintiff was the safest available. (See *Louis v. Barenfanger* (1968), 39 Ill. 2d 445, 236 N.E.2d 724, *cert. denied* (1968), 393 U.S. 935, 21 L. Ed. 2d 271, 89 S. Ct. 296; *Alfano v. Board of Trade* (1979), 76 Ill. App. 3d 248, 250, 395 N.E.2d 384, 386.) The court was correct in this ruling.

Plaintiff's expert was properly permitted to testify concerning the safety standards that, in his opinion, would be applicable to a house with a roof like the one at plaintiff's jobsite. In particular, the expert was permitted to read into evidence section 1926.451 of the Occupational Safety and Health Act (29 C.F.R. §1926 (1985)), which provides that unless the workers are wearing safety belts attached to life lines, the roof should have a work platform area extending two feet beyond the protection of the eaves and be equipped with a guard rail, midrail, and toe board. Thus, we disagree that the expert was prevented from testifying concerning any issue in this case.

We further disagree with plaintiff's contention that a witness may always testify as to the ultimate issue in a case. (See, *e.g.*, *Laff v. John O'Butler Co.* (1978), 64 Ill. App. 3d 603, 618, 381 N.E.2d 423, 434, *cert. denied* (1979), 444 U.S. 844, 62 L. Ed. 2d 57, 100 S. Ct. 88.) An opinion is admissible on the ultimate issue only if it will assist the trier of fact in understanding the evidence or determining a fact in issue. (*Hall v. Archer-Daniels-Midland Co.* (1986), 142 Ill. App. 3d 200, 215, 491 N.E.2d 879, 888, *rev'd on other grounds* (1988), 122 Ill. 2d 448, 524 N.E.2d 586; E. Cleary & M. Graham, Handbook of Illinois Evidence §704.1 (4th ed. 1984).) Here, we believe the jury had sufficient information concerning the safety devices in effect at the time of plain-

tiff's injury to infer a willful violation if it found that the defendant was in charge of the work. (See *Hernandez v. Power Construction Co.* (1978), 73 Ill. 2d 90, 98-99, 382 N.E.2d 1201, 1205; cf. *Duffin v. Seibring* (1987), 154 Ill. App. 3d 821, 832, 507 N.E.2d 930, 937, *appeal denied* (1987), 116 Ill. 2d 553, 515 N.E.2d 105.) This was not an instance where testimony on an ultimate fact issue would have assisted the jury, and, therefore, such testimony was properly not admitted. See *Freeding-Skokie Roll-Off Service, Inc. v. Hamilton* (1985), 108 Ill. 2d 217, 221, 483 N.E.2d 524, 526.

■ The plaintiff also claims he was surprised when the defendant's expert, Dr. Leonard Smith, testified as to his allegedly previously undisclosed medical opinions concerning defendant's neurological condition. The trial court, however, had granted the plaintiff a second deposition during a special trial recess based on the plaintiff's representation that he had propounded Rule 220 interrogatories to the expert. (See 107 Ill. 2d R. 220.) In fact, the plaintiff later conceded to the court that he had not propounded any Rule 220 interrogatories to the defendant's expert. Plaintiff now argues that it is irrelevant whether he had propounded interrogatories to the defendant because defense counsel improperly showed Dr. Smith plaintiff's 1982 X rays and asked him whether there was evidence of a syrinx in those X rays to support the defense theory of the preexisting nature of plaintiff's injuries.

Supreme Court Rule 220 (107 Ill. 2d R. 220) was designed to eliminate surprise at trial through the disclosure of experts and the basis of their opinions. Thus, the rule provides that the testimony of an expert at trial may not be inconsistent with nor go beyond the fair scope of facts known or opinions disclosed in the discovery proceedings. However, the rule further provides that an expert "shall not be prevented from testifying as to facts or opinions on matters regarding which inquiry was not made in the discovery proceedings." (107 Ill. 2d R. 220.) In the discovery deposition here, Dr. Smith testified only as to his opinions following his physical examination of plaintiff. But, it was plaintiff's attorney who had failed to ask Dr. Smith for any additional opinions about plaintiff's condition or congenital causes of his current injuries. Dr. Smith's opinion at trial was properly based upon his examination of the plaintiff and the medical records, including the November 1982 X rays, which were already in evidence at the time of his testimony and which were available at the time of Dr. Smith's original deposition. Thus, his testimony at trial did not violate Rule 220. (*Swaw v. Klompien* (1988), 168 Ill. App. 3d 705, 522 N.E.2d 1267; *Georgacopoulos v. University of Chicago Hospitals & Clinics* (1987), 152 Ill. App. 3d 596, 504 N.E.2d 830.) In any event, plaintiff was given the

opportunity of a second deposition during trial in which he could have asked Dr. Smith concerning his opinion of possible preexisting causes of the plaintiff's present disabilities, but plaintiff did not ask Dr. Smith about these opinions. Finally, the plaintiff could have also sought to recall his expert, Dr. Shea, to rebut Dr. Smith's testimony. (*Cf. Mazur v. Lutheran General Hospital* (1986), 143 Ill. App. 3d 528, 493 N.E.2d 62.) He did not ask to do this either. Accordingly, under these circumstances, we hold that the trial court did not abuse its discretion in permitting Dr. Smith to testify concerning his opinion of the plaintiff's present condition and the cause of his injuries.

■ Finally, the plaintiff argues that the jury verdict was against the manifest weight of the evidence, and thus, the trial court erred in denying his motion for judgment notwithstanding the verdict or, in the alternative, a new trial. Except for the plaintiff's own testimony, which was substantially different from his deposition testimony, however, the evidence established that it was Vern Hoffswell and not the defendant who was in charge of the work for the roofing job. Michael Kiegley, plaintiff's co-worker, testified that Vernon Hoffswell supervised the work and directed the employees on the job, and, further, that no employees from Parichy Company gave any kind of direction of supervision concerning the scaffolding or its erection, or gave any direction concerning how the job was to be done. Kiegley also testified that Hoffswell had complete control and supervision of the job.

Plaintiff now complains that Kiegley was incompetent to testify that Vernon Hoffswell was in charge of the work because that was a legal conclusion; yet, at the same time, plaintiff asserts that his testimony on the same issue was competent. Moreover, we note that at the close of all evidence, the jury heard portions of the plaintiff's deposition in which he testified that it was Vernon Hoffswell who came out to the jobsite to inspect the work and to tell the roofers when they were doing something incorrectly. Theodore Parichy, whom plaintiff called as an adverse witness, similarly testified that Hoffswell was given complete control over completion of the subcontracted work and that Parichy Company's rule was limited to delivering materials to the jobsite through a jobber and smoothing relations with the customer.

Thus, contrary to the plaintiff's assertions, the evidence showed that Hoffswell was an experienced subcontractor who had performed more than 30 similar jobs for the defendant in which he used his own equipment, his own employees, and supervised the work from beginning to end. (*Cf. Dean v. Talman Home Federal Savings & Loan Association* (1987), 163 Ill. App. 3d 800, 516 N.E.2d 951.) The jury in this case found that the defendant was not in charge of the work and was

not liable to the plaintiff under the Act for plaintiff's injuries. Here, the evidence, when viewed in its entirety and most favorably to Parichy Company, does not so overwhelmingly favor Fogarty that the trial court should have set aside its verdict. *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504.

The plaintiff has asserted numerous other errors which he claims had the cumulative effect of prejudicing his case and warranting a new trial. These alleged errors include: (1) permitting the defendant to *voir dire* the jury on its knowledge of Operation Greylord; (2) improperly deducting time from plaintiff's closing argument; (3) the trial court's comment to the jury that it was instructed to "disregard certain references by counsel as to independent contractors, subcontractors and so forth" which prevented plaintiff from arguing reasonable inferences from the evidence; (4) sustaining defense objections to plaintiff's opening and closing statements; (5) permitting the defendant to allegedly argue to the jury about the plaintiff's morality when plaintiff's motion *in limine* had barred issues concerning morality; (6) the trial court's error in refusing to tender plaintiff's proffered jury instructions which stated that the plaintiff was entitled to damages for any aggravations of preexisting conditions precipitated by the fall; and (7) displaying a negative and prejudicial demeanor toward the plaintiff's lead counsel and cocounsel during trial. Having reviewed the record, we find that these other errors of which the plaintiff complains are either without basis in the record or do not constitute an abuse of discretion sufficient to require a new trial. (See *Oko v. Rogers* (1984), 125 Ill. App. 3d 720, 466 N.E.2d 658.) Even if any of the claimed errors did occur, they would not be sufficient ground for setting aside the jury verdict which we have found, as stated above, is amply supported by the evidence.

Accordingly, for these reasons, we affirm the judgment of the circuit court of Cook County.

Judgment affirmed.

BUCKLEY and O'CONNOR, JJ., concur.